**Ovel W. OHLER, Plaintiff-Appellant,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE OF the UNITED STATES of America, Defendant-Appellee.**

No. 78–1064.

United States Court of Appeals, Tenth Circuit.

Submitted June 21, 1978.

Decided Sept. 11, 1978.

H. K. Westmoreland of Westmoreland & Westmoreland, Fort Smith, Ark., for plaintiff-appellant.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Hubert H. Bryant, U.S. Atty., and Robert P. Santee, Asst. U. S. Atty., Tulsa, Okl., and Alan M. Grochal, Atty., Dept. of Health, Education and Welfare, Baltimore, Md., for defendant-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a district court order upholding the denial of black lung benefits for Ovel W. Ohler by the Secretary of Health, Education and Welfare (HEW).

The issue before this Court is whether the HEW findings are supported by substantial evidence.

Ohler's claim for black lung benefits was filed in October 1972. The administrative judge found that Ohler was born January 6, 1908, he completed only a fifth grade education, he "may have worked for approximately 30 years in the coal mining industry . . ." and his last substantial gainful employment was in 1971.

Thus, Ohler filed his claim prior to December 31, 1973, and had more than 15 years in coal mining, to qualify him for the most favorable presumptions as to disability under the law and regulations governing black lung benefit claims. 30 U.S.C. §§ 921 (c), 923. On July 1, 1973, he was 65 years of age and had not worked since 1971. Ohler was drawing veteran's administration and social security disability benefits on that date. If he has pneumoconiosis, the evidence in the record does not establish any cause other than his employment in a coal mine.

The law provides, *inter alia,* that to carry out the intent of the black lung legislation,

> no claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram. In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, . . . and other supportive materials.

30 U.S.C. § 923 (b). It also contains a presumption for miners suffering pneumoconiosis who were employed for 10 years or more that the disease arose of the mining employment. 30 U.S.C. § 921 (c)(1). If a miner was employed for 15 years or more, and there is a chest roentgenogram which is interpreted as negative,

> and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, . . . The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

30 U.S.C. § 921 (c)(4). Total disability under this act means when pneumoconiosis prevents the claimant from engaging in gainful employment requiring the skills and abilities of his previous mining employment. 30 U.S.C. § 902 (f).

■ Regulations were adopted containing certain liberal standards to be applied to those persons such as Ohler who filed their claims by June 30, 1973. Total disability is presumed, as applicable to Ohler, if a chest X-ray establishes the existence of pneumoconiosis *or* ventilatory studies establish a chronic respiratory disease as demonstrated by values equal to or less than the following:

| Height of Claimant | $FEV_1$ | MVV |
|---|---|---|
| 67" or less | 2.3 | 92 |
| 68" | 2.4 | 96 |
| 69" | 2.4 | 96 |
| 70" | 2.5 | 100 |

20 C.F.R. § 410.490 (b)(1) (1977). If a claimant cannot meet these standards he can still prevail by proving that he is unable to do the work equivalent to his previous employment, and that X-rays or a biopsy shows he had pneumoconiosis, or absent such proof, he demonstrates the existence of a disabling chronic respiratory or pulmonary impairment by other evidence. The other evidence includes medical tests and all the items listed in 30 U.S.C. § 923 (b) quoted above. *See* 20 C.F.R. §§ 410.490 (e), 410.-412, 410.414 (1977).

The medical evidence before HEW, as relevant to the tests enumerated above, was:

1. A medical report dated December 18, 1973, by John S. Highland, M. D., showing Ohler had morning coughing and phlegm problems, shortness of breath and pulmonary emphysema. It recorded Ohler's height as 67 inches.

2. A medical report of H. Wendelkin, M. D., dated February 2, 1973, indicating morning phlegm, all day coughing, shortness of breath and very mild emphysema. Lungs were said to be clear with normal excursion and heart normal (apparently from listening, not based upon X-ray). Ohler's height was recorded as 67 inches.

3. An X-ray report dated February 2, 1973, interpreted by Meyer W. Jacobson, M. D., as normal with no active disease and negative for pneumoconiosis. Pulmonary function studies of the same date, apparently interpreted by Dr. Jacobson showed $FEV_1$ was 2.5 liters and MVV was 55.8 liters.

4. Pulmonary function studies dated October 29, 1974, taken at the Oklahoma State Sanatorium by Glen P. Dewberry, M. D., showing $FEV_1$ was 2.0 liters, without listing any MVV. The report stated a diagnosis of "pulmonary insufficiency due to chronic restrictive and obstructive pulmonary disease." There was reference to an X-ray of the same date, but no interpretation is shown. Ohler's height was listed in this report as 69 inches (5'9").

There were no personal appearances, and the administrative law judge and the appeal panel made the determination from the written record of the examinations summarized above. The relevant findings by the administrative law judge were:

4. There is no medical evidence in the record establishing that the claimant has pneumoconiosis or any significant or severe respiratory impairment of any kind.

5. Pulmonary function studies given the claimant do not show that the claimant's respiratory impairments are so severe as to be considered of a disabling nature.

The administrative law judge also found, and stressed somewhat in his report, that Ohler's last work in the mining industry was around 1948 and he had engaged in substantial gainful activity since leaving the mines.

When Ohler filed his petition for review in the United States District Court he attached to it a medical report dated April 14, 1975, after the last action of HEW. He treated this as new and material evidence supporting his claim. The report, by Frank L. Bradley, M. D., diagnosed Ohler as suffering from pneumoconiosis and cor pulmonale. It referred to an X-ray report, to pulmonary function tests showing $FEV_1$ of

2.39 liters and MVV of 51 liters, and to other data. This report listed Ohler's height as 68 inches.

A motion for remand to HEW based upon this medical evidence was denied by the district judge, and we held an attempted appeal therefrom to be premature. *Ohler v. Secretary of Health, Education and Welfare,* No. 76–1574 (10th Cir., filed Feb. 10, 1977, unpublished).

The case was submitted to the district court on briefs and the written evidence, and that judge upheld the decision of the Secretary of HEW as supported by substantial evidence. The memorandum opinion recited the report of Dr. Bradley but did not comment thereon except to mention its earlier ruling that the evidence was "cumulative." No finding was made as to whether such report could properly be considered in the review of the HEW decision.

■■■ We hold that evidence outside the record which was presented to the administrative law judge may not be considered in judging whether the decision was based upon substantial evidence. There is no right to trial *de novo* in the district court or here. 30 U.S.C. § 923 (b); 42 U.S.C. § 405 (g). The district court may, "at any time, on good cause shown, order additional evidence to be taken before the Secretary." 42 U.S.C. § 405 (g). Thus, the new medical report by Dr. Bradley may not be considered in the evaluation of whether the Secretary's decision is supported by substantial evidence, but may form the basis for remand if it is deemed to be of sufficient import. *See Keating v. Secretary of Health, Education and Welfare,* 468 F.2d 788 (10th Cir. 1972).

In the instant case the evidence supporting the administrative judge's determination consists of the negative X-ray report, and the fact that one of the pulmonary function studies showed an $FEV_1$ reading above the levels set out in the applicable regulation. Perhaps certain aspects of the reports of Drs. Highland and Wendelken can also be considered supportive of the denial of benefits. Normally great deference is paid to the trier of the facts, and the recited evidence would be considered enough to uphold the agency decision.

There are several factors which lead us to a contrary conclusion here, however. First, the administrative judge's decision and apparently all appellate reviews were made without receiving any oral testimony and solely upon the briefs and the written medical and other reports in the record before us.

> In a series of cases, this court has held that in the absence of oral testimony the appellate court is equally as capable as the trial court of examining the evidence and drawing conclusions therefrom, and that we are under a duty to do so . . (footnote omitted).

*Aetna Casualty and Surety Co. v. Hunt,* 486 F.2d 81, 84 (10th Cir. 1973).

Secondly, the findings of the administrative law judge state that "[t]here is no medical evidence in the record establishing . . . pneumoconiosis or any significant or severe respiratory impairment of any kind." The report of Dr. Dewberry, before the administrative judge, flatly contradicts that statement. It makes a diagnosis of "[p]ulmonary insufficiency due to chronic restrictive and obstructive pulmonary disease." Its $FEV_1$ reading is significantly below the requirements of the regulations, although there is no MVV reading shown. The reported emphysema in the Highland and Wendelkin reports we consider as supportive of finding Ohler suffered from a significant respiratory disease. The unchallenged statements that Ohler was receiving veteran's administration and social security disability payments also would seem to contradict the administrative law judge's statements.

We are also disturbed by differences in the medical reports. Ohler's height is recorded as 5'7" in two, but 5'9" in one; and we cannot help but notice the extra-record report of Dr. Bradley uses still another height, 5'8". The actual height is important because if Ohler were 5'10" even the pulmonary study most unfavorable to his claim would show him as having a chronic

respiratory disease, based upon $FEV_1$ and MVV values alone. Considering the regulations make small variations significant in determining disability, the differences between $FEV_1$ reports of 2.0 in the Dewberry examination versus 2.5 in the Jacobson analysis seem quite far apart for a supposedly measurable function of the human body.

■ The law states expressly that no claim for benefits shall be denied solely on the basis of chest X-rays which are read as negative for pneumoconiosis. 30 U.S.C. §§ 921 (c)(4), 923 (b). The law and regulations establish strong presumptions in favor of those who were in the mines for at least 15 years, to the effect that once the existence of a disabling respiratory impairment is established the burden shifts to the Secretary to prove that it is not pneumoconiosis. And negative X-rays are not enough to sustain that burden. Id.; 20 C.F.R. § 410.-490 (1977).

■ The judge found this claimant "may have worked for approximately 30 years" in the mines; he had supporting affidavits for 19 years of such service. Since pneumoconiosis is a progressive disease, as is emphysema, we do not think it is indicative that Ohler did not have the disease that he quit the mines in 1948 and worked at other jobs until 1971. There is no evidence that his other work might have contributed to his respiratory problems.

The regulations provide that age, education and ability to engage in other types of work are to be considered in the determination of total disability. 20 C.F.R. § 410.426 (1977). The individual claimant here was 65 years of age as of July 1, 1973, had a fifth grade education, had not worked for approximately two years, and was receiving both veteran's administration and social security disability benefits.

One cannot read the Black Lung Act and its various amendments without realizing the extreme liberality with which this law was intended to operate, particularly with respect to long-term coal miners, whose benefits were to be paid by the government rather than the coal operators. We said in *Paluso v. Mathews,* 573 F.2d 4, 10 (10th Cir. 1978):

We believe that the matter of "probability" should be further refined so as to encompass a presumption that a claimant who filed for benefits before the cut-off date is to be regarded as a "good faith" claimant and that if medical evidence acquired after June 30, 1973, can be construed to lead to a diagnosis that a miner *probably* was suffering from the disease on or before June 30, all reasonable doubts that he was so disabled are to be resolved in favor of the claimant. We are of the view that all reasonable inferences and presumptions should be construed in favor of a miner who when he filed his claim believed that he was suffering from black lung, even though he had not mustered sufficient evidence of his disability prior to the cut-off date. We anchor this approach to a variety of factors, including a claimant's ignorance or misunderstanding of eligibility standards, lack of adequate medical evidence due to the progressive nature of black lung disease, a miner's financial inability to seek proper medical confirmation, and inexact methods of diagnosis. It is a matter of overriding importance that the Act is remedial in nature and is to be given liberal construction. [Emphasis in original.]

As evidence of the intentions of Congress the Black Lung Reform Act of 1977, 92 Stat. 95, 103–105, adds 30 U.S.C. § 945, which will permit this claimant, if he should lose the present appeal, the right to have his claim reconsidered again by HEW on the record, or, at claimant's option, to have it referred to the Secretary of Labor if he wishes to present additional medical or other evidence in support of his claim of disability.

■ We reverse the judgment below and remand the case with directions to send it back to the Secretary of Health, Education and Welfare for further deliberation in view of the considerations discussed herein, and to take additional relevant evidence

proffered either by the government or the claimant.