Caroline P. COATES, personally and on behalf of Tammy Garcia, Danny Romero, and John W. Mayse, Jr., Plaintiffs,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 77–K–1054.

United States District Court, D. Colorado.

July 25, 1979.

Charles B. Darrah, Denver, Colo., for plaintiffs.

Joseph F. Dolan, U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This action arises under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Plaintiff, a resident of the district of Colorado, seeks review of a final administrative determination. The action was commenced within sixty days following receipt by plaintiff of a notice of final decision by the defendant Secretary of Health, Education and Welfare.

In the administrative process below, the Secretary granted child's insurance benefits under Section 202(d) of the Act, 42 U.S.C. § 402(d), to Maria L. Mayse on the earnings record of John W. Mayse, Sr., an insured wage earner who had been determined to be the child's father. As a result of this decision, the child's insurance benefits of Tammy Garcia, Danny Romero and John W. Mayse, Jr.—all of whom also receive benefits on the earnings record of John W. Mayse, Sr.—were reduced. On February 28, 1977, at plaintiff's request, an Administrative Law Judge conducted a hearing to consider the decision further. Final agency action was taken on September 21, 1977 and the complaint herein was filed on November 18, 1977. The transcript of the record of proceedings was filed on March 9, 1978 and now, following the submission of briefs, the matter is ripe for decision.

On January 1, 1970, in Des Moines, Iowa, John W. Mayse, Sr. died as the result of gunshot wounds. On August 12, 1970, an application for child's insurance benefits was filed on behalf of Tammy Garcia, Danny Romero and John W. Mayse, Jr. on the earnings record of the deceased. The application was approved. On July 20, 1976, an application for child's insurance benefits was filed on behalf of Maria L. Mayse and this application was also approved, on September 2, 1976. As a result of this latter approval and the maximum level of benefits, the benefits of Tammy Garcia, Danny Romero, and John W. Mayse, Jr. were reduced. A request for reconsideration of the determination finding Maria L. Mayse entitled to child's benefits was filed on October 20, 1976. The initial determination was reconsidered and found to be correct. The administrative law judge, before whom plaintiff appeared, considered the case *de novo*, and on June 17, 1977 found that Maria L. Mayse was entitled to child's insurance benefits, as set forth above, and that the benefits of the other entitled children would necessarily be reduced. On June 24, 1977, plaintiff requested further consideration by the appeals council, and, on its deci-

sion that the determination of the administrative law judge was correct, the administrative action became final on September 21, 1977.

■ As in all of these cases, the only issue before the court is whether the final decision of the Secretary is supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Trujillo v. Richardson*, 429 F.2d 1149 (10th Cir. 1970). To meet this standard, the decision must be founded upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401, 91 S.Ct. at 1427.

After considering the entire record, the administrative law judge made the following specific findings:

1. Maria L. Mayse was born on April 29, 1962.

2. Maria L. Mayse is the natural daughter of John W. Mayse, Sr.

3. Maria L. Mayse is deemed to be the child of John W. Mayse, Sr. under Section 216(h)(3) of the Social Security Act.

4. Maria L. Mayse is deemed to have been dependent upon John W. Mayse, Sr. at the time of his death.

5. Maria L. Mayse is unmarried and is under the age of 18 years.

6. Maria L. Mayse is entitled to insurance benefits on the account of John W. Mayse, Sr.

(Tr. 18–19.)

A description of the parties and other persons here involved will be helpful to an understanding of the evidence.

a. Maria L. Mayse is the daughter of Esther Vigil Mayse, and was born on April 29, 1962.

b. Esther Vigil Mayse is the natural mother of Maria L. Mayse. Esther testified that John W. Mayse, Sr. was the father of Maria. About two years after Maria's birth, Esther married Howard R. Mayse, John's brother, on April 4, 1964. In 1968, Esther signed Maria's reissued birth certificate, which stated that Howard Mayse was Maria's father.

c. John W. Mayse, Sr., the deceased, never married Esther nor lived with Esther or Maria. At the time of his death, by which time he was married to Caroline P. Coates, he was not contributing to Maria's support.

d. Howard R. Mayse, the brother of John W. Mayse, Sr., married Esther, the mother of Maria, approximately two years after Maria was born. He contributed to Maria's support and in 1968 filed two affidavits with the State of Colorado, Bureau of Vital Statistics, stating that he was the natural father of Maria. Howard R. Mayse is named on the child's birth certificate as Maria's father.

e. Caroline P. Coates, the plaintiff herein, was the wife of John W. Mayse, Sr. at the time of his death and is the representative payee of Tammy Garcia, Danny Romero and John W. Mayse, Jr.

■ Though there is some conflicting evidence in the record, the decision below is clearly supported by substantial evidence. As defined at Section 216(e) of the Act, 42 U.S.C. § 416(e), every dependent "child" of an insured wage earner is entitled to insurance benefits upon that wage earner's death or disability. Section 202(d)(1), 42 U.S.C. § 402(d)(1). For these purposes, a child is "deemed" dependent upon the wage earner *unless* (1) the wage earner, at the relevant time, was not living with or contributing to the child's support *and* (2) the child is neither the wage earner's legitimate nor adopted child, or has been adopted by someone else. Section 202(d)(3), 42 U.S.C. § 402(d)(3). Where a child is the legitimate offspring of the wage earner, either natural or adopted, the child is generally entitled to these survivor's benefits without additional qualification. On the other hand, while illegitimate children may also qualify for benefits under several provisions of the Act, some additional showing, generally of paternity and sometimes of actual, rather than presumed, dependency must be made. *See generally Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). An otherwise illegitimate child will be

deemed legitimate, pursuant to Section 202(d)(3), 42 U.S.C. § 402(d)(3), if, according to applicable state law, he or she could inherit intestate personal property from the wage earner, Section 216(h)(2)(A), 42 U.S.C. § 416(h)(2)(A), or the wage earner, during his lifetime, had either acknowledged in writing that the child was his, been decreed by a court to be her father, or been ordered to contribute to her support, because the child was his. Section 216(h)(3)(C)(i), 42 U.S.C. § 416(h)(3)(C)(i).[1] Once a child has qualified under one or another of these provisions, that child is likewise deemed dependent on the wage earner, in the same fashion described above, at Section 202(d)(3), 42 U.S.C. § 402(d)(3). Thus, for this and similar cases, the operative issue is one of paternity. Once this has been established in a manner prescribed by the Act, the child is deemed both dependent and legitimate, and is therefore entitled to benefits.

■ The findings of the administrative law judge have been set out above. Generally, the evidence showed that Maria L. Mayse was born on April 29, 1962 to Esther Vigil Mayse. In addition, several items of evidence support the conclusion that John W. Mayse, Sr. was the child's natural father. First, Esther Mayse consistently testified that John Mayse was in fact the child's father and that she had not had any relationship with Howard Mayse until after Maria had been born. (Tr. 56.) Second, by way of affidavit, Mary O. Vigil, Esther's grandmother and Maria's great-grandmother, with whom both were living during and after the time of Maria's birth (Tr. 12), stated that John Mayse was the only person that Esther was dating at the time that she became pregnant and that, after Maria was born, John Mayse visited Esther and Maria and admitted to Mrs. Vigil that he was the child's father. (Tr. 172.) Finally, in a non-support proceeding brought by Esther

Mayse in 1963, in Huerfano County, Colorado, John Mayse admitted that he was Maria's father and agreed to contribute $50.00 a month to her support. (Tr. 12, 185.) For two months subsequent to this agreement, John Mayse did in fact contribute to Maria's support. (Tr. 13.) The above items are substantial evidence in support of the conclusion below that John W. Mayse, Sr. was in fact Maria's father.

The only conflicting evidence in the record consists of a new birth certificate issued in January 1969 (Tr. 169) and two affidavits signed by Howard R. Mayse (Tr. 170, 171), indicating that Howard, rather than John Mayse, was Maria's father. However, at the hearing below, Esther Mayse testified that those documents were obtained by Howard Mayse because he did not want John Mayse to continue bothering his family or threatening to take Maria. (Tr. 50–53.) In addition, Esther Mayse continued to insist that Howard Mayse was not in fact the father and that John Mayse was. (Tr. 51–53.) It is the role of the administrative law judge to weigh the evidence and resolve any conflicts that might exist therein. *See, e. g., Garrett v. Califano*, 460 F.Supp. 888 (D.Kan.1978). Here there is ample evidence to support his finding, and, so supported, it is accepted by this court. *Trujillo v. Richardson, supra*, at 1150.

■ Applying the law to these facts, it was found, and is affirmed here, that Maria L. Mayse is entitled to child's insurance benefits on the earnings record of John W. Mayse, Sr., pursuant to Section 202(d) *et seq.*, 42 U.S.C. § 402(d) et seq. In finding that Maria was John Mayse's "legitimate" child, the administrative law judge relied on Section 216(h)(3)(C)(i), 42 U.S.C. § 416(h)(3)(C)(i), as described above, which requires that the deceased wage earner have either acknowledged the child in writing or been adjudicated to be her father or

1. While the Act does not expressly include Section 216(h)(2)(A) within those provisions by which a child is deemed legitimate, the Supreme Court has twice indicated otherwise, saying that a child who may inherit intestate personal property is also deemed to be the wage earner's legitimate child. *See Norton v. Mathews*, 427 U.S. 524, 526 n.1, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976) and *Mathews v. Lucas*, 427 U.S. 495, 499 n.2 and 514 n.17, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

to contribute to her support. In doing so, the administrative law judge looked to the nonsupport proceeding brought by Esther Mayse in 1963. Plaintiff attacks this consideration, arguing that the justice of the peace who was there involved did not have jurisdiction to enter any final order on the alleged charge. (Answer Brief, at 3.) However, as the Secretary has pointed out, applicable Colorado law did, in 1963, expressly provide for the mode of resolution which was here employed. Under 1963 C.R.S. § 43–1–1 *et seq.*, which expressly pertained to those situations where a person failed to provide reasonable support for his illegitimate child, a justice of the peace was provided jurisdiction to reach a final disposition. In relevant part, that article provides as follows:

> *43–1–2. Suspension of sentence.*—In the interest of justice, and for the protection of such wife, child or children, the court may suspend any sentence imposed against any person under this article upon conditions to be named by the court, which conditions shall require such person to perform his duty toward his wife and child or the mother of his child and to comply with the provisions of this article. As long as such conditions are complied with such sentence may be suspended
>
> .  .  .  .
>
> .      .      .      .      .
>
> *43–1–4. Jurisdiction*—procedure before justice.—
>
> .  .  . Any justice of the peace shall have authority to continue any such case from time to time before final order is made binding over such party to the county or district court if such defendant shall give a bond .  .  . as provided in section 43–1–1 *to keep such promises or conditions as may be imposed by such justice* for complying with the provisions of section 43–1–1.
>
> (2) Such justice shall have authority to order the defendant to appear before the court from time to time to ascertain if all

conditions for compliance with this article *imposed by said justice* are being complied with, and at any such time may enter a final order in such cause binding over such defendant .  .  . .

> (3) When any such case is continued from time to time by any justice of the peace *or* any judge of a court of record, *or* where any period of probation is permitted .  .  . and at any time within such period .  .  . where any judge before whom such case is pending is satisfied that the defendant in good faith intends to comply with the provisions of this article, such cause may be dismissed and the defendant discharged with or without a final conviction of the offense mentioned in section 43–1–1. Any person prosecuted or proceeded against under this article shall have the right to demand a speedy hearing and trial as in other cases of felony .  .  . .

1963 C.R.S. ch. 43 (emphasis added).

These provisions make clear that a justice of the peace did have authority to impose conditions in order to enforce compliance with the statute's duty of support, and, where compliance was promised or otherwise assured, to dismiss the matter without further action. Here, John Mayse appeared before a justice of the peace on July 20, 1963, and, after having been advised of his court rights, pled guilty to the charge of nonsupport regarding Maria L. Mayse. (Tr. 12, 185.)[2] In addition, after an examination into the case, the court itself found John Mayse to be guilty. (Tr. 185.) As a consequence of these proceedings, John Mayse promised to contribute $50.00 a month to Maria's support.

Section 216(h)(3)(C)(i)(III) of the Act expressly provides that an applicant for child's insurance benefits will be deemed to be the child of an insured wage earner if that wage earner was, during his lifetime, "ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter .  .  . ." 42

---

2. According to then applicable Colorado law, a person accused of any criminal charge was provided the opportunity, before a justice of the peace, to respond to the charge made against him. *See* 1963 C.R.S. § 79–15–20.

U.S.C. § 416(h)(3)(C)(i)(III). It is by now well-established that the Social Security Act is in the nature of remedial legislation and is to be liberally construed. Narrow and legalistic interpretations are to be avoided, *Schroeder v. Hobby*, 222 F.2d 713 (10th Cir. 1955), and the Act is to be construed in favor of the party seeking its benefits. *Millemon v. Secretary of Health, Education and Welfare*, 256 F.Supp. 938 (D.Okl.1966); *Ketcherside v. Celebrezze*, 209 F.Supp. 226 (D.Kan.1962). *Cf. Ohler v. Secretary of Health, Education and Welfare of the U. S.*, 583 F.2d 501 (10th Cir. 1978) (Black Lung benefits, provisions to be liberally construed). Accordingly, it is found that Maria L. Mayse did make a showing in satisfaction of Section 216(h)(3)(C), where applicable state law clearly provided the above-described judicial procedure for determining obligations of support.

■ In light of the above determination, it is not necessary to determine whether Maria L. Mayse might also qualify for benefits pursuant to Section 216(h)(2)(A), which involves an inquiry into whether a child would be entitled to inherit intestate property according to applicable state law.[3]

■ As a final matter, plaintiff has raised the issue that consideration by the administrative law judge of the affidavit of Mary O. Vigil (Tr. 172) was improper, since plaintiff was not provided an opportunity to cross-examine Mrs. Vigil's statements.

(Answer Brief, at 4.) Because of the determination that it has otherwise been established that Maria L. Mayse is, within the meaning of the Act, the child of John W. Mayse, Sr., this contention, even if correct, would not deprive the decision below of its basis in substantial evidence.

While applicable regulation gives each party to a social security hearing the right to appear and present evidence, 20 C.F.R. § 404.934(a), and to examine witnesses, 20 C.F.R. § 404.929, it is also the case that "[e]vidence may be received at the hearing even though inadmissible under rules of evidence applicable to court procedure, . . . ." 20 C.F.R. § 404.928. As a general matter, hearsay is admissible in an administrative hearing and can constitute substantial evidence if it has sufficient probative force. *Richardson v. Perales*, 402 U.S. at 404–06, 91 S.Ct. 1420; *West v. United States*, 207 Ct.Cl. 513 (1975).

In addition, the record here indicates that plaintiff did not avail herself of arrangements made at the hearing by which Mrs. Vigil could be examined by plaintiff at a time subsequent to the hearing. At the time that the affidavit was offered as evidence, counsel for plaintiff, though he recognized the informality of the administrative process, objected that he would like the right to cross-examine Mrs. Vigil before the affidavit was entered into the record. (Tr. 65.) In response to a question from the

3. While not expressly made an issue here, plaintiff expressed an opinion below that Maria Mayse, in another situation, might be entitled to benefits on account of Howard Mayse's earnings record rather than that of John Mayse. (Tr. 68.) In addition to the fact that this matter is not here in issue—and nor has Maria Mayse made any application on account of Howard Mayse's earnings, relevant law indicates that the fact that Maria has been supported by her stepfather does not deprive her of the opportunity to receive benefits on the earnings record of her natural father, although she might also be entitled to benefits on account of her stepfather's earnings. *See* Sections 202(d)(4) and 216(e)(2), 42 U.S.C. §§ 402(d)(4) and 416(e)(2). Under a prior version of Section 202(d)(3), a child would not be deemed dependent upon her father if such father was not living with or contributing to her support and "such child, at the time of such

individual's death, was living with and supported by such child's stepfather." Social Security Amendments of 1939, ch. 666, § 202(c)(3)(C), 53 Stat. 1364. However, in 1960, further amendments to the Act removed subparagraph (C) to former § 202(c)(3) [and by then § 202(d)(3)], for the express purpose of allowing a child to receive benefits on account of her father's earnings record even though the child is supported by a stepfather. *See* Social Security Amendments of 1960, Pub.L. 86–778, § 202(a), 74 Stat. 946; Senate Report No. 1856, *reprinted in* [1960] U.S.Code Cong. & Admin. News, pp. 3608, 3620 and 3629. "Section 202(a) of the bill amends section 202(d) . . . to provide for the payment of child's insurance benefits based on the earnings of the child's father even though . . . living with and receiving more than one-half of [her] support from [her] stepfather." Id. at 3679.

administrative law judge concerning whether Mrs. Vigil would be available for examination, counsel for Maria L. Mayse assured the judge and counsel for plaintiff that Mrs. Vigil was available. (Tr. 65.) The administrative law judge then marked the affidavit as a proposed exhibit and reserved his ruling. (*Id.*) Regulation provides for such a procedure. 20 C.F.R. § 404.927 states in relevant part:

If the presiding officer believes that there is relevant and material evidence available which has not been presented at the hearing, the presiding officer may adjourn the hearing or, at any time prior to the mailing of notice of the decision, reopen the hearing for the receipt of such evidence. The order in which evidence and allegations shall be presented and the procedure at the hearing generally, except as these regulations otherwise expressly provide, shall be in the discretion of the presiding officer and of such nature as to afford the parties a reasonable opportunity for a fair hearing.

There is no indication in the record that plaintiff made any subsequent attempt to examine Mrs. Vigil or to introduce any other evidence relative to her statements. In *Richardson v. Perales, supra,* a claimant similarly objected to a lack of opportunity to cross-examine several doctors who had written reports concerning his physical condition. In response, the Supreme Court noted that the claimant had not taken advantage of the opportunity to request subpoenas—where, as here, the claimant had been told that the evidence was available for examination—or sought a supplemental hearing. 402 U.S. at 404–05, 91 S.Ct. 1420. "This inaction," the court concluded, ". . . supports the Court of Appeals' view [*Cohen v. Perales*], 412 F.2d [44], at 50–51, that the claimant as a consequence is to be precluded from now complaining that he was denied the rights of confrontation and cross-examination." *Id.* at 405, 91 S.Ct. at 1429.

The procedural rights of parties to Social Security hearings are not insignificant. Here, however, the decision below is based upon substantial evidence, with or without

the affidavit of Mrs. Vigil, and plaintiff, in addition, did not avail herself of the expressed opportunity to examine Mrs. Vigil at a time subsequent to the hearing.

As Maria L. Mayse has been shown to be the child of John W. Mayse, Sr. within the meaning of the Social Security Act, and, as Section 202(d)(3), 42 U.S.C. § 402(d)(3) deems her to be both dependent and legitimate, the decision of the Secretary is affirmed.

IT IS ORDERED that the Clerk of this Court shall enter judgment in favor of defendant and against plaintiff, each party to bear his or her own costs.

IT IS FURTHER ORDERED that this civil action is hereby dismissed.