RALEIGH v WATKINS

Docket No. 46005. Submitted February 13, 1980, at Lansing.—Decided
     April 24, 1980.

David Raleigh brought an action in circuit court seeking visita-
     tion rights with the child born to Pamela Watkins, asserting
     paternity of that child. Defendant in her original answer admit-
     ted plaintiff's paternity but denied that plaintiff should have
     visitation rights. Defendant later, by an amended answer,
     denied plaintiff's paternity. Evidence was offered which showed
     that defendant, while still married, had sexual relations with
     plaintiff during the period July 12, 1975, to October, 1975, and
     that during that period she used no contraceptives. Proofs
     further showed that defendant's last act of intercourse with her
     husband was no later than July 12, 1975, and that she had
     been taking birth control pills while she was living with her
     husband. A blood test indicated that the child's blood was
     compatible with plaintiff's blood. At the time of her divorce on
     November 5, 1975, defendant indicated that she stated that no
     children were born of her marriage. It was uncontroverted that
     plaintiff was of fine character and had a sincere love and
     devotion for the child. While there was no evidence that
     plaintiff's visitation pursuant to temporary orders of visitation
     had any bad effects upon the child, defendant's expert witness
     opined that visitation was not in the child's best interests
     because of the child's inability to comprehend the concept of a
     biological nonresident father and because the distress to defen-
     dant caused by plaintiff's visits ultimately affected the child.
     The Washtenaw Circuit Court, Henry T. Conlin, J., determined
     that plaintiff was the father of the child and ordered that
     plaintiff have visitation rights. Defendant appeals. *Held:*

     1. It was proper for the circuit court, in this suit to secure
     visitation rights, to consider the question of whether plaintiff
     was the natural father of the child, even though defendant was

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 10 Am Jur 2d, Bastards § 19.

[3] 10 Am Jur 2d, Bastards §§ 19-24.

[4, 5] 10 Am Jur 2d, Bastards § 62.5.

Right of putative father to visit illegitimate child. 15 ALR3d 887.

married at the time of conception of the child. Since the proofs offered were clear and convincing evidence of plaintiff's paternity of the child, the presumption of legitimacy was rebutted and the circuit court's determination of paternity was proper.

2. The best interests of the child standard contained in the Child Custody Act of 1970 is applicable to the less pervasive right to visitation of the child by plaintiff, the natural father of the child.

3. Since the circuit court's determination that permitting visitation of the child by plaintiff was in the best interests of the child is not against the great weight of the evidence, the order granting visitation is affirmed pursuant to the appellate review standard contained in the Child Custody Act of 1970.

Affirmed.

1. CHILDREN BORN OUT OF WEDLOCK — VISITATION — COURTS — STATUTES.

It is proper for the circuit court, in an action by a putative father seeking visitation rights with a child, to determine the lineage of a child born at a time when the child's mother was married to another (MCL 722.24; MSA 25.312[4]).

2. CHILDREN BORN OUT OF WEDLOCK — EVIDENCE — PRESUMPTIONS — LEGITIMACY.

A putative father who is seeking to show that he is the natural father of a child conceived while the child's mother was legally married to another must, in order to rebut the presumption of legitimacy, show by clear and convincing evidence that he is the natural father.

3. CHILDREN BORN OUT OF WEDLOCK — PRESUMPTIONS — LEGITIMACY — PATERNITY — VISITATION — EVIDENCE.

The presumption of legitimacy is rebutted and paternity is proven where a putative father seeking visitation rights with his child establishes that: (1) the child's mother's last intercourse with her husband was no later than July 12, 1975; (2) the child's mother used birth control pills while married to her husband; (3) the child's mother was divorced from her husband on November 5, 1975; (4) the child's mother had sexual relations with the putative father during the period of July 12, 1975 to October, 1975; (5) the child's mother in pleadings filed with the circuit court admitted becoming pregnant during the period she was having sexual relations with the putative father; (6) a blood test of plaintiff indicated that plaintiff's blood was compatible with the child's blood; and (7) the child was born May 24, 1976.

4. CHILDREN BORN OUT OF WEDLOCK — BEST INTERESTS OF CHILD —
      VISITATION — STATUTES.

    The best interest of the child standard contained in the Child
      Custody Act of 1970 is applicable to the determination of the
      less pervasive right to visitation of a child by a putative father
      (MCL 722.23; MSA 25.312[3]).

5. CHILDREN BORN OUT OF WEDLOCK — VISITATION — BEST INTERESTS
      OF CHILD — APPEAL.

    An order by a circuit court awarding the right of visitation of a
      child to a putative father will be affirmed where the circuit
      court finds that such visitation is in the best interests of the
      child and the Court of Appeals finds that the trial court's
      determination is not against the great weight of the evidence.

*Edward B. Goldman,* for plaintiff.

*Burgoyne & Pratt,* for defendant.

Before: J. H. GILLIS, P.J., and ALLEN and M. J. KELLY, JJ.

PER CURIAM. Defendant Pamela Watkins appeals from the Washtenaw County Circuit Court's order finding paternity in and granting visitation rights to plaintiff David Raleigh.

Defendant, mother of Christopher Watkins, claims error in the trial court's finding that plaintiff is the natural father of defendant's infant son, thereby establishing plaintiff's standing to seek visitation privileges with respect to his son. The right of a putative father to litigate a custody claim was established by this Court in *Winsett v Donaldson,* 69 Mich App 36, 39; 244 NW2d 355 (1976). The *Winsett* Court stated, "It is entirely proper for a circuit court, in the course of hearing a child custody dispute, to determine the lineage of a child born at a time when the child's mother was married". Although *Winsett* was decided in the context of a custody dispute, its reasoning is equally applicable to a petition for visitation privi-

leges. The Child Custody Act provides that the court shall fix rights and duties as to custody, support and *visitation* in the best interests of the child. MCL 722.24; MSA 25.312(4). When the child is conceived while the mother is legally married to another man, as in the instant case, the evidence that plaintiff is the child's natural father must be clear and convincing in order to rebut the presumption of legitimacy. *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977). Here, the evidence offered to prove paternity included:

(1) An admission in defendant's original sworn answer to plaintiff's complaint that plaintiff was the child's father;

(2) An additional admission by defendant in a subsequent brief filed for an October 23, 1976, hearing that defendant became pregnant by the plaintiff during the time she lived with him;

(3) Defendant's statement at trial that she was taking birth control pills while she was living with her husband;

(4) Defendant's statement at trial that she utilized no contraceptives during the time she lived with and had sexual relations with plaintiff;

(5) Defendant's statement at trial that the father of her child could only be either her husband or plaintiff.

(6) Defendant's last date of intercourse with her former husband was between July 4 and July 12, 1975. Defendant used birth control pills until July 12, 1975. Defendant lived with plaintiff from July 12, 1975, through August 15, 1975, and continued to have sexual relations with him through October of 1975. The minor child, Christopher, was born May 24, 1976. Therefore, the relevant dates indicate that in order for defendant's husband to be the father of her child the birth control pills would

have to have been ineffective and defendant would have to have been approximately four months pregnant at the time of her divorce in 1975. Yet, defendant stated she did not know she was pregnant at the time of her divorce;

(7) Defendant's judgment of divorce stated that no children were born of defendant's marriage to her husband. When defendant was given the opportunity to amend that judgment to reflect the fact of having had a child by that marriage, the opportunity was declined;

(8) A blood test of plaintiff requested by defendant indicated that plaintiff's blood type was compatible with the blood type of his alleged son, Christopher;

(9) No steps were ever taken by defendant to determine whether her former husband could be the father of her child;

(10) Plaintiff testified that defendant told him that Christopher was his son; and

(11) Defendant's expert witness, Dr. Carol Austad, testified that defendant told her that plaintiff David Raleigh "must be" Christopher's father.

The only evidence offered against the finding of paternity was defendant's denial at trial based on her conviction that she will "never be 100% sure" that plaintiff is the father of her son. We conclude that the trial court was correct in its judgment finding that plaintiff rebutted the presumption of legitimacy and proved paternity in himself by clear and convincing evidence.

Having decided that plaintiff had standing to litigate his claim for visitation rights, we next consider whether the trial court erred in finding that granting such rights was in the child's best interests. In making its decision the lower court recognized the child's best interest as the control-

ling issue. We agree with the trial court's approach to deciding the visitation question in accordance with the "best interest" analysis factors set forth in the Child Custody Act, MCL 722.23; MSA 25.312(3). The fact that the Child Custody Act analysis is applicable in situations other than the typical custody dispute is demonstrated by the Supreme Court's decision in *In the Matter of Baby Boy Barlow,* 404 Mich 216; 273 NW2d 35 (1978). The *Barlow* court sanctioned the use of the Child Custody Act's definition of the child's best interest in a case involving termination of parental rights under the adoption code. This multiple factor definition was designed to assure that custody is awarded to the party best equipped to raise the child; therefore, the standards embrace a wide range of considerations. Plaintiff herein seeks only visitation rights, not custody of the child. Defendant has no ground for complaint based upon utilization of the Child Custody Act standards as a guide in considering plaintiff's petition for a grant of far less pervasive rights.

In addition to providing standards for determining the best interest of the child, the Child Custody Act set forth the standard of appellate review:

"Sec. 8. To expedite the resolution of a child custody dispute by prompt and final adjudication, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28· MSA 25.312(8).

Our review of the record indicates that the trial court's award of visitation rights was not against the great weight of the evidence and is therefore

affirmed. Several witnesses commented as to plaintiff's fine character and sincere love for and devotion to his son. None offered any testimony to the contrary. It was uncontroverted that plaintiff had sought permanent visitation rights with Christopher since the child was 13 weeks old and had consistently exercised his temporary visitation rights in the past. Plaintiff further contributed regular support payments for the child since Christopher was 13 weeks old, which were rejected by defendant and accordingly reserved in an escrow account pending the outcome of this appeal. No witness testified as to any bad effects on Christopher resulting from plaintiff's visitation; in fact, even the defendant and her family admitted that Christopher is a loving and affectionate, secure child who does not appear to be disturbed by the visitation. Defendant further conceded that Christopher appears to be happy when plaintiff comes to visit and regards plaintiff as a friend.

The trial court also considered the testimony of defendant's expert witness, Dr. Carol Austad, that visitation was not in the child's best interest. This opinion was based upon the three-year-old child's inability to comprehend the concept of a biological nonresident father and upon the distress that plaintiff's visits caused to the mother, which ultimately affected the child. The lower court opined that "the positive elements of Plaintiff's visitation more than outweighs [sic] any speculative carry-over effect of the mother's discomfort to the child". We believe the trial court's evaluation is in accord with the great weight of the evidence.

This case presents a unique situation in that the mother, father, and child never formed a traditional family unit. The relationship between the parties ceased before the child was born and

mother and child have resided with the child's maternal grandparents since defendant's divorce. However, we do not believe that the lack of psychological ties between father and son should serve to deprive plaintiff of visitation rights since, as the trial court noted, "this is due to the limited opportunity which plaintiff has had to cultivate these bonds. Plaintiff does have, and has shown, the love and affection a natural father has for his child."

The "best interest of the child" test is highly subjective and individualized. Our decision is necessarily limited to the factual circumstances present here. Plaintiff is apparently a fit parent deserving of visitation rights. Trial testimony indicates that the child is cheerful, stable, and will ultimately benefits from his father's visits.

The decision of the trial court is affirmed.