KLEIN v FRANKS

Docket No. 51050. Submitted December 11, 1980, at Lansing.—Decided November 16, 1981.

Jayne M. Klein brought a paternity action against Gary E. Franks. The Isabella County Department of Social Services intervened as a party plaintiff. Plaintiff Klein filed a motion seeking to compel the defendant to submit to a human leukocyte antigen (HLA) test. The Isabella Circuit Court, Robert H. Campbell, J., denied the motion, finding that the Paternity Act permits the court to order a blood test only at the request of the putative father and that only those blood test results which result in the exclusion of the putative father are admissible into evidence. The plaintiff appeals by leave granted, alleging that the HLA test is not a blood test within the meaning of the Paternity Act, that the act violates equal protection, and that the results of an HLA test should be allowed into evidence to show a putative father's paternity. *Held:*

1. The HLA test is a blood test within the meaning of the statute.

2. The statute does not violate the mother's equal protection rights.

3. The statute precludes the admission of blood test results to show paternity. Also, the General Court Rules specifically resolve any conflict between the Paternity Act and any court rules in favor of the act. Thus, even if such evidence were otherwise admissible, the statute would control.

4. Similarly, the Michigan Rules of Evidence are construed *in pari materia* with the General Court Rules, and the Paternity Act is held to take precedence over any conflicting rule of evidence. Therefore, the results of an HLA test would not be admissible under the Rules of Evidence.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 10 Am Jur 2d, Bastards § 118.

29 Am Jur 2d, Evidence § 370.

[2] 16A Am Jur 2d, Constitutional Law § 796.

[3, 4] 20 Am Jur 2d, Courts §§ 82, 84, 86.

[5] 20 Am Jur 2d, Courts § 86.

1. CHILDREN BORN OUT OF WEDLOCK — EVIDENCE — BLOOD TESTS.

> A human leukocyte antigen test is a blood test within the meaning of the statutory provision which precludes admission into evidence in a paternity action of any blood test results except those which exclude the putative father (MCL 722.716; MSA 25.496).

2. CHILDREN BORN OUT OF WEDLOCK — EVIDENCE — BLOOD TESTS.

> The statutory provision which precludes admission into evidence in a paternity action of any blood test results except those which exclude the putative father does not result in a denial of equal protection to the plaintiff mother (MCL 722.716; MSA 25.496).

3. STATUTES — COURT RULES — PATERNITY ACT.

> Conflicts between statutes and court rules concerning judicial practice and procedure are to be resolved in favor of the court rules, however, in the case of the Paternity Act, a court rule provides that the statute takes precedence over any other conflicting court rule (MCL 722.11 et seq.; MSA 25.491 et seq., GCR 1963, 730.1).

4. STATUTES — RULES OF EVIDENCE — PATERNITY ACT.

> Conflicts between statutes and the Michigan Rules of Evidence are to be resolved in favor of the rules; however, in the case of the Paternity Act, the act takes precedence over any conflicting provisions of the Rules of Evidence (MCL 722.711 et seq.; MSA 25.491 et seq., MRE 101).

5. STATUTES — RULES — JUDICIAL CONSTRUCTION.

> Doctrines of statutory construction may be applied when attempting to ascertain the intent of the Supreme Court in promulgating a rule.

*Lynn Chamberlain,* for plaintiff Jayne M. Klein.

*Thomas M. Robertson,* for Isabella County Department of Social Services.

*Lynch, Gallagher & Lynch,* for defendant.

Amicus Curiae:

Prosecuting Attorneys Association of Michigan (by *Joseph T. Barberi* and *Henry S. Emrich).*

Before: Bronson, P.J., and J. H. Gillis and C. L. Bosman,* JJ.

C. L. Bosman, J. Plaintiff appeals by leave of this Court from the trial court's order denying her motion to compel the defendant putative father to submit to a human leukocyte antigen (HLA) blood test.

Plaintiff, mother of a child born out of wedlock, filed a paternity action against defendant, the putative father, and the Isabella Department of Social Services intervened as a party plaintiff. The trial court ruled that the Paternity Act, 1956 PA 205; MCL 722.711 *et seq.;* MSA 25.491 *et seq.,* permits the court to order a blood test only on request of the putative father and precludes the admission into evidence of any blood test results except those which result in the exclusion of the putative father.

The first issue raised on appeal is whether the trial court erred in finding the HLA test to be a blood test within the meaning of MCL 722.716; MSA 25.496. We conclude that it did not. The statute provides in part:

"Sec. 6. (a) In any proceeding under this act before trial, the court, upon application made by or on behalf of the alleged father, shall order that the mother, child and alleged father submit to 1 or more blood tests to determine whether or not the defendant can be excluded as the father of the child. No blood test of any child shall be taken before the child reaches the age of 6 months. Whenever the court orders any blood test to be taken and the mother refuses to submit either herself or the child to the test, such fact shall be disclosed upon the trial unless good cause is shown for not doing so.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

* * *

"(d) The result of the tests shall be receivable in evidence in the trial of the case but only in cases where definite exclusion is established. If more than 1 expert is appointed by the court, and if they disagree in their findings or conclusions, neither the findings, conclusions or the results of these tests shall be admissible as evidence of the paternity or nonpaternity of the alleged father."

A common sense reading of the term "blood test" shows that it means any test performed upon a person's blood. Since medical and legal authorities uniformly refer to the HLA test as a blood test, we conclude that the trial court did not err in construing the HLA test to be a blood test within the meaning of the statute. See *Joint AMA-ABA Guidelines: Present Status of Serologic Testing in Problems of Disputed Parentage,* 10 Family Law Quarterly 247 (1976).

The next issue raised on appeal is whether MCL 722.716; MSA 25.496 is violative of equal protection and contrary to public policy. In *Wardell v Henry,* 90 Mich App 483; 282 NW2d 363 (1979), *lv den* 407 Mich 903 (1979), the plaintiff filed a paternity action against the defendant. When the plaintiff refused to answer interrogatories submitted by defendant, the defendant filed a motion to compel the plaintiff's answers. The trial court held that the plaintiff was not required to answer the interrogatories since, under the Paternity Act, discovery was not equally available to both parties. On appeal, the plaintiff argued that it would be a denial of equal protection to permit the defendant to utilize discovery while denying her access to the same procedures. We recognized that the statute in question, MCL 722.715; MSA 25.495, placed the plaintiff mother and the defendant putative father

in separate classifications and concluded that, since discovery is not a fundamental interest, the traditional equal protection test was the proper standard of review. For the same reasons as set forth in *Wardell v Henry, supra,* we hold that the statute does not result in a denial of the plaintiff mother's equal protection rights.

Plaintiff also argues that because of the HLA test's proven reliability the results of such test should be allowed at trial as inclusive evidence of a putative father's paternity. In Terasaki: *Resolution by HLA Testing of 1000 Paternity Cases Not Excluded by ABO Testing,* 16 Journal of Family Law 543, 554-555 (1977-1978), it is stated:

"A revolution in paternity testing is currently underway with the introduction of HLA testing. The HLA system of tissue types is so powerful in determining the probability of paternity that many of the older rules of evidence for blood tests in disputed paternity cases now require complete revision.

"Generally, it has been assumed by American courts that blood testing is only valid for exclusion of paternity. This conclusion is based on the fact that when the putative father is not excluded by ABO testing, his chances of actually being the father are not usually high. Thus, for purposes of blood test evidence, any random male could have been the father almost as easily as the nonexcluded putative father. With HLA testing, the probability of a nonexcluded male being the actual father is usually over 90%.

*     *     *

"In practical terms, the ABO red cell test is the simplest and least expensive test for exclusion of paternity, and should be the one to be used initially. Since this test excludes less than 10% of the putative fathers, most of the cases would still be disputed. This article has shown that in 1,000 such cases of nonexclusion by ABO, 90% of the cases can be resolved to the extent that they are classified either as excluded (25% of the

putative fathers) or nonexcluded, together with a relatively high percent probability of paternity (90%). By selectively adding other tests to the HLA testing, it would be possible to increase the percent probability of paternity and to exclude some fraction of the males who fall in the nonexclusion category. However, as this article demonstrates, the HLA test provides, by itself, a very powerful, effective new tool in cases of disputed paternity."

Some states, notably California, New York and New Jersey, recognize the HLA test as having probative value. See *Cramer v Morrison,* 88 Cal App 3d 873; 153 Cal Rptr 865 (1979), *Malvasi v Malvasi,* 167 NJ Super 513; 401 A2d 279 (1979), and *Goodrich v Norman,* 100 Misc 2d 33; 421 NY Supp 285 (1979).

MCL 722.716; MSA 25.496, however, precludes the admission of such evidence in order to show paternity. Appellant correctly notes that it is an aspect of the judicial function, and not the legislative function, to establish rules of practice and procedure for the courts. Conflicts between statutes and the court rules concerning judicial practice and procedure must be resolved in favor of the latter. *Perin v Peuler,* 373 Mich 531, 541-542; 130 NW2d 4 (1964), *People v Joker,* 63 Mich App 421; 234 NW2d 550 (1975), *lv den* 395 Mich 779 (1975), Const 1963, art 6, § 5, GCR 1963, 16. However, GCR 1963, 730.1 resolves any conflict between the Paternity Act and any other court rule in favor of the Paternity Act by specifically stating that the Paternity Act takes precedence over any other conflicting court rule.

Appellant further asserts, however, that MRE 401 and 402, defining and generally allowing for the admission of relevant evidence, conflict with the Paternity Act. As such, appellant contends

that the rule of evidence must prevail. We agree with appellant that, as "relevant evidence" is defined by MRE 401, the results of HLA tests are relevant in paternity actions. We also agree that conflicts between statutes and the Michigan Rules of Evidence must be resolved in favor of the rules. *James v Dixon,* 95 Mich App 527, 530; 291 NW2d 106 (1980), MRE 101.

Unlike the General Court Rules, no rule appearing in the Michigan Rules of Evidence provides that conflicts between them and the Paternity Act are to be resolved in favor of the statute. Nonetheless, in our opinion, the Paternity Act prevails. We have previously held that doctrines of statutory construction may be applied when attempting to ascertain the Supreme Court's intention in promulgating a rule. *People v Lange,* 105 Mich App 263, 266; 306 NW2d 514 (1981), *Cleveland-Cliffs Iron Co v First State Ins Co,* 105 Mich App 487, 493-494; 307 NW2d 78 (1981). In our opinion, the General Court Rules and the Michigan Rules of Evidence are *in pari materia* and must be construed in harmony with one another. Each set of rules pertains to judicial practice and procedure. Indeed, contemporaneously with the adoption of the Michigan Rules of Evidence, the chapter in the General Court Rules concerning evidence was substantially revised. Compare Chapter 60 of the General Court Rules pre-MRE and post-MRE. We cannot believe that the Supreme Court intended the Paternity Act to take precedence over any conflicting general court rule and at the same time intended conflicting rules of evidence to supersede the Paternity Act. Instead, it is our opinion that the Supreme Court either consciously believed GCR 1963, 730.1 was a sufficient indication of its intent as concerns the applicability of both sets of

rules in paternity cases or that the Supreme Court failed to consider the impact of the rules of evidence on the Paternity Act. Assuming, *arguendo,* that the latter is true, we do not believe that, given GCR 1963, 730.1, the Supreme Court would hold that the Michigan Rules of Evidence take precedence over the Paternity Act if it considered the issue.

Michigan courts have consistently held that blood type evidence, when used for purposes of inclusion, is inadmissible. *People v Nichols,* 341 Mich 311; 67 NW2d 230 (1954), *Shepherd v Shepherd,* 81 Mich App 465, 471; 265 NW2d 374 (1978). Even when the inclusion is narrowed to a much smaller percentage of the population blood type evidence has been excluded. *People v Sturdivant,* 91 Mich App 128; 283 NW2d 669 (1979). We conclude, therefore, that the trial court did not err.

The Paternity Act does not distinguish between various blood testing procedures. MCL 722.716; MSA 25.496 was adopted well before the HLA testing procedure had progressed to its current state of the art. Perhaps it is time for the Legislature to reevaluate the integrity of the newer testing procedures and reassess their usefulness in paternity cases. However, it is not the function of this Court to upset statutes which have been held procedurally and constitutionally sound by our Supreme Court.

Affirmed.