PIZANA v JONES

Docket No. 61529. Submitted March 16, 1983, at Detroit.—Decided July 11, 1983.

Alonzo Pizana filed a paternity action in Oakland Circuit Court against Jearline Jones, alleging that he was the father of the child born out of wedlock to defendant on July 14, 1978. Robert B. Webster, J., on plaintiff's motion, ordered that plaintiff, defendant and the child submit to human leukocyte antigen (HLA) testing in order to determine parentage. Plaintiff was permitted to put into evidence the HLA test results, including testimony by an expert witness that, on the basis of the test results, the probability that plaintiff was the father of the child was 95.56% when compared with a random black male and 99.8% when compared with a random white male. The trial judge determined, on disputed evidence, that plaintiff was the father of the child. The admission of the test results and the determination as to paternity was expressly done pursuant to the provisions of the Child Custody Act rather than the paternity act. Defendant appeals. *Held:*

1. The trial court erred in proceeding under the provisions of the Child Custody Act. Paternity proceedings are purely statutory in nature. The paternity act governs the determination of paternity with respect to children born out of wedlock.

2. Under these circumstances where the paternity action was brought by the putative father and the evidence of test results tending to establish paternity was offered by the putative father, there was no error in permitting such test results into evidence even though the trial of the cause was prior to the effective date of the amendment to the paternity act which permitted the use of such evidence.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 10 Am Jur 2d, Bastards § 67.
[2] 10 Am Jur 2d, Bastards § 75.
[3] 10 Am Jur 2d, Bastards § 74.
[4] 10 Am Jur 2d, Bastards § 118.
Blood grouping tests. 46 ALR2d 1000.

1. Children Born out of Wedlock — Paternity.

Paternity proceedings in Michigan are of a purely statutory nature.

2. Children Born out of Wedlock — Paternity Act.

The purpose of the paternity act is to provide for the support of illegitimate children.

3. Children Born out of Wedlock — Paternity Act — Child Custody Act.

An action to determine the paternity of an illegitimate child is properly brought and decided under the provisions of the paternity act rather than the Child Custody Act (MCL 722.21 et seq., 722.711 et seq.; MSA 25.312[1] et seq., 25.491 et seq.).

4. Children Born out of Wedlock — Evidence — Blood Tests.

It is not error for a trial court to admit into evidence in a paternity action held prior to a 1982 amendment of the paternity act the results of a human leukocyte antigen test which establishes a high degree of probability that the putative father is the father of the child where the paternity action is brought by the putative father and the test result evidence is offered by the putative father (MCL 722.716; MSA 25.496).

*Ashley Gorman,* for plaintiff.

*Eloise Williams,* for defendant.

Before: T. M. Burns, P.J., and Cynar and P. J. Marutiak,* JJ.

Cynar, J. Defendant appeals as of right from a circuit court judgment finding that plaintiff is the father of a child born to defendant on July 14, 1978.

On August 13, 1979, plaintiff filed his paternity complaint, alleging that he was the father of defendant's child, Kiela Nasha Payne, born out of wedlock on July 14, 1978. In her answer, defendant denied that plaintiff was the father of her child. Pursuant to the court's order, upon plain-

* Circuit judge, sitting on the Court of Appeals by assignment.

tiff's motion, plaintiff, defendant and the child submitted to human leukocyte antigen (HLA) testing in order to establish parentage.

At trial, plaintiff testified that he and defendant engaged in sexual intercourse on numerous occasions between August and November, 1977, inclusive. Plaintiff believes that he is the child's father.

On the other hand, although defendant admitted having sexual relations with plaintiff, defendant testified that she and plaintiff quarreled in mid-September, 1977, and that she did not see or speak with plaintiff again until June, 1978. Defendant also testified that she had sexual relations with James Moore from mid-October until December, 1977.

James Moore acknowledged that he had sexual relations with defendant from mid-October until the end of the year. Moore believed that he was the child's father.

Each side presented additional evidence favoring their own position. Critical evidence was presented by plaintiff through Richard H. Walker, M.D. Defendant unsuccessfully moved to exclude Dr. Walker's testimony relative to the results of the blood and tissue-typing tests.

Dr. Walker conducted blood and tissue-type testing, including blood grouping, HLA, heptoglobin and sickle cell tests, on plaintiff, defendant and the child in May, 1980. Dr. Walker testified that, based on the blood grouping tests, it was impossible to exclude plaintiff from paternity. Dr. Walker described the remaining tests. The remaining tests involve isolation of genetic traits contained in blood, so-called "markers". The greater the correlation between a child's "markers" and a putative father's "markers", the greater the probability that the putative father is the biological father.

HLA testing began in the 1950's and at that time was used primarily in tissue typing for organ transplants. The test involves the isolation of white blood cells from the blood. These cells are tested against different reagents to determine the "markers". HLA testing is the most advanced system for obtaining paternity exclusions and, failing an exclusion, for giving a high probability of inclusion. Dr. Walker testified that, based on the test results, the probability that plaintiff was the father of defendant's child, as compared to the probability that a random black man was the father, was 95.56%. The probability that plaintiff was the father, as opposed to a random white man, was 99.8%.

The parties stipulated that defendant's last menstrual period ended on October 6, 1977. Dr. Walker indicated that generally the most fertile time for conception occurs approximately two weeks after the first day of the last menstrual period. In defendant's case, however, conception could have occurred prior to the last menstrual period or as late as the first week of November, 1977.

At the close of proofs, the trial court concluded that plaintiff was the child's father. The court relied heavily but not exclusively on the test results, and the paternity determination was expressly made under the Child Custody Act, MCL 722.21 *et seq.;* MSA 25.312(1) *et seq.*

A threshold question in this case is whether the trial court could determine paternity under the Child Custody Act.

Paternity proceedings are of a purely statutory nature. *McFetridge v Chiado,* 116 Mich App 528, 530; 323 NW2d 470 (1982). The purpose of the paternity act is to provide for the support of illegitimate children. *Smith v Robbins,* 91 Mich

App 284, 289; 283 NW2d 725 (1979), *lv den* 408 Mich 853 (1980). The paternity act provides that paternity litigation may be commenced by the mother, the father or the Department of Social Services. MCL 722.714(a); MSA 25.494(a). Here, the child was born out of wedlock, under either the old or the new definition of that phrase. Even if *Winsett v Donaldson,* 69 Mich App 36; 244 NW2d 355 (1976), and *Raleigh v Watkins,* 97 Mich App 258; 293 NW2d 789 (1980), cited by plaintiff, are still good law, they are factually distinguishable because plaintiff had a forum to litigate his claim under the paternity act. The trial court erred by establishing paternity under the Child Custody Act. Plaintiff's action to determine paternity lies under the paternity act and should be governed by the pertinent provisions of that act.

The next question for this Court to address is whether reversible error occurred by the admission of the HLA test results.

At the time of trial, the results of blood tests were receivable into evidence only in cases where a definite exclusion was established. MCL 722.716(d); MSA 25.496(d) prior to its amendment by 1982 PA 129. This is in contrast to the amended statute which, effective April 20, 1982, provides in pertinent part:

"(1) In a proceeding under this act before trial, the court, upon application made by or on behalf of either party, or on its own motion, shall order that the mother, child, and alleged father submit to blood or tissue typing tests which may include, but are not limited to, tests of red cell antigens, red cell isoenzymes, human leukocyte antigens, and serum proteins to determine whether the alleged father is likely to be, or is not, the father of the child.

\* \* \*

"(4) The result of a blood or tissue typing test, and if a determination of exclusion of paternity cannot be made, a calculation of the probability of paternity made by a person the court determines is qualified as an examiner of blood or tissue types based on the result of a blood or tissue typing test shall be admissible in evidence in the trial of the case." MCL 722.716; MSA 25.496 as amended by 1982 PA 129.

We are persuaded that the trial court did not reversibly err by admitting into evidence in this case the HLA test results. 1956 PA 205, § 6; MCL 722.716; MSA 25.496 refers to the state of the art of serologic testing at the time it was drafted in the mid-1950's, namely standard blood grouping or ABO tests. Blood grouping tests are the "potential best evidence" for establishing nonpaternity. See *Shepherd v Shepherd*, 81 Mich App 465, 470; 265 NW2d 374 (1978). Standard blood group testing, however, is irrelevant for establishing paternity because any random male has nearly as high a probability of being the father as the nonexcluded putative father.

HLA testing is distinguishable from blood group testing in significant respects. Unlike ABO testing, HLA testing is a "potentially powerful tool in determining the probability of paternity". See *Varney v Young*, 106 Mich App 545, 547-548; 308 NW2d 276 (1981). Moreover, although HLA testing does involve the drawing of blood, it is more accurately described as a system of tissue typing than as a blood test. This is manifested by the amendment of MCL 722.716; MSA 25.496.

In reaching our decision, we have noted the case, cited by defendant, of *Klein v Franks*, 111 Mich App 316; 314 NW2d 602 (1981). We are not persuaded that *Klein* is binding authority for this case for two reasons. First, *Klein* was decided on

November 16, 1981, considerably before the amendment of the paternity act, and the Court did not have the benefit of considering the amendment. Second, in *Klein,* the mother and not the father sought introduction of the HLA test results. It was appropriate for the *Klein* Court to protect the defendant father from a trial by scientific test, particularly prior to the amendment of the paternity act. The present case is distinguishable. The plaintiff father sought to use the evidence to support his allegations of paternity. In this case, the HLA test results were not significantly different from other tests traditionally presented in a civil action. Because the HLA test results tended to prove a fact of consequence, *i.e.,* paternity, the evidence was properly admissible at trial. MRE 401.

In affirming this case, we note that we do not decide whether the evidence would have been admissible in a case where the mother, in bringing a paternity action against the putative father, sought to introduce evidence of HLA test results. That case is not before us.

Affirmed.