**Marion GOFORTH on Behalf of Melanie BENNETT, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 86–71530.

United States District Court, E.D. Michigan, S.D.

March 11, 1987.

James T. Miller, Romeo, Mich., for plaintiff.

Pamela J. Thompson, Asst. Chief, Civ. Div., U.S. Attorney's Office, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Plaintiff has sought judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Secretary of Health and Human Services denying surviving child's insurance benefits. Plaintiff filed an application for benefits, on behalf of her daughter on March 9, 1983. The application was denied initially and on reconsideration. A hearing was held before an administrative law judge (ALJ) on June 21, 1985. In a decision dated November 13, 1985, the ALJ found that Melanie Bennett did not satisfy the statutory requirements for receiving surviving child's benefits. The Appeals Council denied Plaintiff's request for review on February 12, 1986, and the ALJ's decision thereby became the final decision of the Secretary.

This matter is presently before the Court on cross motions for summary judgment. These motions were referred to a magistrate for a report and recommendation. In a report filed October 30, 1986, Magistrate Hooe recommended reversal of the ruling of the ALJ and remand of the matter to the Secretary for a determination of benefits payable to Plaintiff. Defendant filed timely objections with this Court,[1] requiring the Court to make a *de novo* review of those portions of the report to which Plaintiff objects. *See United States v. Shami*, 754 F.2d 670 (6th Cir.1985).

---

1. Defendant filed objections on November 14, 1986. The Magistrate's report was filed on October 30, 1986. In order to be timely filed, objections must be filed within ten days after being served a copy of the Magistrate's report. 28 U.S.C. § 636(b)(1)(C). Pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, when the period of time allowed is less than 11 days, the intermediate Saturdays, Sundays and legal holidays are excluded from the computation. Accordingly, when the intervening Saturday, Sunday and legal holiday are excluded, this Court finds that Defendant's objections were timely filed on the tenth day after the Magistrate's report was filed.

Testimony and evidence presented at the hearing before the ALJ revealed the following information. The applicant, Melanie Bennett, was born on September 27, 1971, when her mother was only 17 years old. Her mother, Marion Bennett-Goforth, applied for and began receiving Aid to Dependent Children (ADC) five months after Melanie's birth. Gary Vashon is the wage earner and purported father of Melanie. Melanie's mother testified as the only witness at the hearing that she had an active and exclusive sexual relationship with Vashon during the period in which the child was conceived. Vashon's name does not appear on the birth certificate but Plaintiff testified that he never denied to her that he was the father of the child. (TR 40) However, in a subsequent paternity action initiated by Plaintiff at the request of ADC, Vashon denied paternity and demanded a jury trial and blood tests. Blood tests were inconclusive and the case was terminated by a stipulation and court order. The court order provided that Vashon would pay to Plaintiff a sum of $450 in forty-five weekly installments of $10 each and thereafter would pay a sum of $3,550 in three hundred and fifty-five weekly installments of $10 each to the Macomb County Friend of the Court who could then direct payments to Marion or alternatively could reimburse the Department of Aid for Dependent Children for payments already made to her. In addition to the above sums, Vashon was required to pay $1.50 per month for the cost of handling the payments. Further, the order provided that the money was to be paid in full and final satisfaction of any claims by Plaintiff in the paternity action against Vashon. Significantly, the order did not declare that Vashon was in fact the father of the child. The case was then dismissed with prejudice. Later, sometime in 1981, Vashon was jailed for non-payment of child support. Vashon died on April 11, 1982, after his release from jail, and the application for surviving child's insurance benefits were filed on March 9, 1983.

The ALJ decided that Melanie did not qualify for benefits because the court order providing for her support was not issued because she was the daughter of the deceased wage earner. 42 U.S.C. § 416(H)(3)(C); 20 C.F.R. 404.355(c). The Magistrate recommends reversal of the ALJ's ruling because, in his opinion, the record reveals clear and convincing indications that the court order was indeed issued because Vashon was Melanie's father. Defendant objects to the Magistrate's recommendation of reversal of the ALJ's denial of benefits. The issue presently before the Court is therefore whether the order directing payments to Marion Bennet-Goforth was made because Vashon was the father of her child. Resolution of this issue requires a discussion of those portions of the Social Security Act pertaining to determinations of family status. 42 U.S.C. § 416(h).

Section 416(h) provides for several different ways in which a child may be deemed to be the son or daughter of an insured individual. Of particular relevance to the issue presented in this case is § 416(h)(3)(C) which provides in part:

An applicant who is the son or daughter of a fully or currently insured individual, but who is not (and is not deemed to be) the child of such insured individual under paragraph (2) of this subsection, shall nevertheless be deemed to be the child of such insured individual if:

(C) in the case of a deceased individual—

(i) such insured individual—

(I) acknowledged in writing that the applicant is his or her son or daughter,

(II) had been decreed by a court to be the mother or father of the applicant, or

(III) had been ordered by a court to contribute to the support of the applicant because the applicant was his or her son or daughter,

and such acknowledgment, court decree, or court order was made before the death of such insured individual,

(ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died.

The parties do not contend that Melanie would qualify as a child of Vashon under paragraph (ii) of the subsection[2] nor do they contend that Vashon has ever acknowledged in writing that Melanie is his child, or that a court has ever decreed him to be the father, or that he was living with or contributing to the support of Melanie at the time of his death. Therefore, the only way in which Melanie can be considered the child of Vashon is if she can qualify under § 416(h)(3)(C)(i)(III) by demonstrating that a court ordered him to contribute to her support because she was his daughter.

It is clear that there is a court order issued in the previous paternity action. However, before Melanie can qualify under this provision, it must be determined that the order provided for contributions to the support of Melanie and also was issued because she was Vashon's daughter. The Code of Federal regulations, 20 CFR § 404.366, is of some assistance in interpreting the term "contribute to the support" of the applicant. Contribution for support occurs if the insured gives some of his own cash or goods and such contributions are made regularly and are "large enough to meet an important part of [a child's] ordinary living costs." 20 CFR § 404.366(a). The Sixth Circuit has addressed the support requirement by recently stating:

> ... [T]he support requirement "must be evaluated in light of the father and child's actual circumstances." *See, Childress v. Secretary of HHS,* 679 F.2d 623, 628 (6th Cir.1982) (quoting *Parker v. Schweiker,* 673 F.2d 160 (6th Cir.1982)). See also, *Boyland v. Califano,* 633 F.2d 430 (6th Cir.1980). Thus, the child may be eligible even if the contributions were small, so long as the contributions were significant relative to the contributor's resources and important to the cost of raising the child.

*Chester v. Secretary of Health and Human Resources,* 808 F.2d 473, 475 (6th Cir.1987). Support requirements have been

satisfied where the wage earner paid only $20.00 per month and where sporadic payments of $10.00 plus gifts, clothing and lunch money were made. *See e.g., Boyland,* 633 F.2d 430; *Parker,* 673 F.2d 160.

Although there is a lack of evidence as to the father's resources and the needs of the child, it is apparent that payments of $10.00 per week amounting to at least $40.00 per month are not an insignificant amount of money. Such payments would be large enough to meet an important part of the costs of raising a child. Accordingly, the payments ordered by the court in 1974 would qualify as contributions for the support of Melanie.

■ The remaining portion of subsection (i)(III) "because the applicant was his or her son or daughter" is much more difficult to interpret and apply. There is virtually no case law interpreting the phrase "because the applicant was his or her son or daughter." However, the court was assisted by an opinion letter written by the Social Security Administration's Office of the Regional Attorney in Chicago, Illinois about the interpretation and application of the phrase. The letter recommended a denial of benefits to an illegitimate child based on facts which are distinguishable from the facts in the instant case. Nevertheless, the attorney recommended that the failure of a court order to make a declaration of paternity does not, by itself, preclude a finding that it was issued because the child was the son or daughter of the insured. Instead, when a court order in a paternity action does not make a finding of paternity but orders payments to be made, the surrounding circumstances may be viewed to ascertain the reasons for issuing the order. The attorney recommended looking at such things as whether a hearing was held and statements were made concerning paternity before the court, or whether the court order refers to a statute requiring a father to support his child. This Court concludes that a child may be

2. Under paragraph (ii), a child may be the child of the deceased insured if he or she would inherit under the laws of intestate succession of the state in which the insured was domiciled at the time of death. A child may also be the child of the insured if the insured went through a marriage ceremony with the other parent.

considered the child of the wage earner where a court orders support payments to be made but does not specifically make a declaration of paternity if the extrinsic evidence and structure of the order indicate that the order was issued because the wage earner was the father of the child. Accordingly, the evidence and the order presented in the instant case must be analyzed to determine whether the order was issued because Vashon was the father of Melanie.

The ALJ determined that the order was not issued because Melanie was the daughter of Vashon but was issued merely as a settlement of the paternity action filed by Melanie's mother. In support of his determination, the ALJ relied only on the fact that the birth certificate did not name a father and the statements of the deceased's family. (TR 8) This Court is of the opinion that the failure to name a father on a birth certificate is not substantial evidence to support the ALJ's finding of non-paternity. Also, the statements relied upon by the ALJ are merely self-serving hearsay contained in letters passed between members of Vashon's family. A court cannot consider such hearsay as evidence in support of the ALJ's decision. Therefore, the Court finds that the ALJ's decision is not supported by substantial evidence. The United States Supreme Court has defined substantial evidence as " 'such evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). The Sixth Circuit has also stated that "[s]ubstantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the 'substantiality of evidence must take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health & Human Services,* 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Pursuant to the standards set forth by the Sixth Circuit and the United States Supreme Court, there is substantial

evidence in the record presently before the Court to support the conclusion that the order issued in the prior paternity action was issued because Gary Vashon was the father of the child.

The Court will first analyze the order itself and then will look at extrinsic evidence presented at the hearing. The order required payment of a total sum of $4,000 in regular weekly installments of $10. These payments therefore were to continue almost eight years. The evidence also shows that Vashon was jailed in 1981 for failure to make payments pursuant to the court order. Generally, parties are not jailed for failure to pay sums under a settlement agreement but are jailed for failure to pay support. See Mich.Comp.Laws Ann., §§ 552.151, 722.719 (West 1967). Furthermore, the order is patterned after the provisions of the Paternity Act of Michigan, Mich.Comp.Laws Ann. § 722.711 *et seq.* (West 1967), whose purpose is to provide support for illegitimate children. See generally, *In re Paternity of Flynn,* 130 Mich.App. 740, 344 N.W.2d 352 (1983); *Pizana v. Jones,* 127 Mich.App. 123, 339 N.W.2d 1 (1983). The order requires the father to make payments to ADC as reimbursements for sums already provided by the agency to support the child. This is expressly provided for by § 722.718. Also the order required payment of $1.50 per month to the friend of the court as expressly stated in 722.729. In addition, the Court notes that the order was drafted by Vashon's attorney. Michigan law states that an agreement dismissing a Paternity Act suit should be strictly construed against the drafter. *Tuer v. Niedoliwka,* 92 Mich. App. 694, 285 N.W.2d 424 (1979). Accordingly, the Court is persuaded that the terms of the order are some evidence that it was issued under the Paternity Act of Michigan and because Vashon was the father of the child and not as mere settlement of the litigation.

Further evidence in support of finding that the order was issued because Vashon was the father of Melanie is found in the unrefuted testimony of Marion. Although Marion was the only witness at the hearing

and no other evidence was presented to deny her allegations of paternity, the ALJ found her to be an incredible witness. The ALJ stated: "The undersigned did not find the claimant to be a particularly credible witness and indeed, her testimony regarding the reaction of her classmates to her pregnancy seemed rather strange and incredible." (TR 8) The Court recognizes that determinations of credibility are entitled to great deference and will stand unless it is patently wrong in view of the record before the court. *Imani v. Heckler*, 797 F.2d 508 (7th Cir.1985). However, the Court finds no factual basis for discrediting the testimony of the claimant. Her failure to discuss the pregnancy with her friends or teachers seems perfectly reasonable in light of her circumstances. The circumstances, as presented by the record, show that she was attending a Catholic school during 1970 and 1971 at the time she was pregnant. Teen pregnancy at that time would have been scandalous no matter what school a young woman attended. An illegitimate pregnancy at a Catholic school would be infinitely more scandalous so that it would be understandable for a pregnant young woman not to call attention to her condition by discussing it with friends and teachers. Discrediting her entire testimony on this failure to discuss the pregnancy with friends is unwarranted.

There is no evidence to support the ALJ's determination that Marion's statement as to paternity of her child was incredible. Her testimony was virtually unrefuted despite the fact that an attorney was present to represent the interests of Vashon's ex-wife and legitimate child. Therefore, the Court finds that the ALJ's determination discrediting the entire testimony of the witness is patently wrong on the basis of the evidence in the record. In sum, the unrefuted testimony of Marion provides substantial evidence that Vashon was the father of Melanie and therefore the Court construes the order requiring support payments to be issued because he is the father of the child.

In reaching the determination that the order was issued because Vashon was the father of the child, the Court viewed the evidence in light of the directive that provisions in the Social Security Act are to be liberally construed. As one court stated: "Narrow and legalistic interpretations are to be avoided, and the Act is to be construed in favor of the party seeking its benefits." *Coates v. Califano*, 474 F.Supp. 812, 818 (D.Colo.1979) (citations omitted) Accordingly, the phrase "ordered by the court to contribute to the support of the applicant because the applicant was his or her son or daughter" should be construed so as to permit a finding of entitlement to benefits under the facts presented by this case.

In conclusion, the Court notes that the policy of the Social Security Act in offsetting the economic dislocation suffered by dependents because of the death of the wage earner would be furthered by awarding benefits to Melanie. *Childress v. Secretary of Health & Human Services*, 679 F.2d 623 (6th Cir.1982). Although there is an absence of precise evidence as to how many support payments Vashon made prior to his death, (TR 78), Melanie may be suffering economically from his death to the extent that she has not yet received full payment under the court order. The failure to make support payments should not provide a basis for claiming the child has suffered no economic dislocation upon the wage earner's death. Since the record does not disclose whether full and final payment under the order was made, the court is reluctant to conclude that Melanie has not suffered economically by Vashon's death. The policy underlying the Act of remedying the economic hardship caused by the death of a parent would be satisfied by granting child insurance benefits to Melanie.

Accordingly, and for the above reasons, the Defendant's motion for summary judgment is DENIED and this case is remanded to the Secretary for a determination of benefits payable to Plaintiff. The Plaintiff shall prepare an appropriate order.